FILED
CLERK, U S. DISTRICT COURT

MAR - 6 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                DEPUTY

Priority  ✓
Send  ✓
Enter  ___
Closed  ___
JS-5/JS-6  ___
JS-2/JS-3  ___
Scan Only ___

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FILIA KOURTIS and CONSTANTINOS KOURTIS,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES CAMERON, INTERNATIONAL CREATIVE MANAGEMENT, MARIO KASSAR, JEFFREY BERG and JOSEPH ROSENBERG,<br><br>Defendants. | CASE NO. CV 02-2906 DT (RNBx)<br><br>ORDER **GRANTING WITHOUT PREJUDICE** DEFENDANTS JAMES CAMERON, INTERNATIONAL CREATIVE MANAGEMENT, JEFFREY BERG AND JOSEPH ROSENBERG'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |

## 1.    Background

Plaintiffs Filia and Constantinos ("Con") Kourtis ("Plaintiffs") are authors of the concept of "The Minotaur," an idea for a film. Plaintiffs claim that defendants James Cameron, International Creative Management ("ICM"), Jeffrey Berg, Joseph Rosenberg and Mario Kassar misappropriated their idea for a shape-changing character. Plaintiffs claim that the defendants copied their idea by creating the film "Terminator II."

Plaintiffs filed this action for copyright violations as well as several state law claims. In 2003, this Court dismissed all claims – the state law claims on statute of



DOCKETED ON CM

MAR - 7 2006

BY                    093

1   limitations grounds, and the copyright claims because it determined collateral

2   estoppel applied. Kourtis v. Cameron, 2003 U.S. Dist. LEXIS 26,603 (C.D. Cal.

3   May 2, 2003). Plaintiffs appealed. The Ninth Circuit affirmed the dismissal of state

4   law claims, but concluded that collateral estoppel did not preclude Plaintiffs from

5   pursuing their copyright claims. Id.

6         On remand, defendants Cameron, Berg, Rosenberg and ICM ("Defendants")

7   move to dismiss the action for failure to state a claim upon which relief may be

8   granted.

9   **A.   Factual Summary[1]**

10         Plaintiffs are the authors of the concept of the film "The Minotaur," and a

11   treatment thereof. Complaint ¶ 11. The Kourtises hired a writer, William Green, to

12   actually write a screenplay based on their treatment, but the Kourtises retained the

13   copyrights to the film.[2] Id. ¶ 13. The Kourtises also hired an artist to create artwork

14   for the film, based on their instructions. Id. ¶ 15.

15         James Cameron is a film producer and director who created the films "The

16   Abyss" and "Terminator II: Judgment Day" ("Terminator II"). Id. ¶ 4. Cameron's

17   agent was employed by ICM at the time. Id. Jeffrey Berg and Joseph Rosenberg

18   were employees of ICM and were involved in supplying the Plaintiffs' materials to

19   Cameron.

20         Mario Kassar was one of the owners of Carolco and a producer of the original

21   _____

22       [1] In considering a motion to dismiss under Rule 12(b)(6), the Court must
assume the plaintiff's factual allegations are true, and must construe the complaint in
23   a light most favorable to the plaintiff. See United States v. City of Redwood City,
24   640 F.2d 963, 966 (9th Cir. 1981). Therefore, the following facts are taken from
Plaintiffs' Complaint only.
25

26       [2] The Kourtises later prevailed in an Australian lawsuit against Green
determining they, and not Green, owned the rights to "The Minotaur." Complaint ¶
27   34.

28

1   "Terminator" and "Terminator II."  Id. ¶ 6.   Kassar purchased the rights to

2   "Terminator III" and "Terminator IV" following Carolco's bankruptcy.  Id.

3        On July 31, 1989, Filia Kourtis submitted the Kourtis treatment and artwork

4   for "The Minotaur" to Berg at ICM.  Id. ¶ 18.  On August 4, Con Kourtis confirmed

5   with Berg that he had the treatment and artwork, and provided him a draft script.  Id.

6   Berg told Con Kourtis that he would give all the material to Cameron.  Id.

7   Meanwhile, Kassar had already received a draft script of "The Minotaur" on

8   February 23, 1989.  Id. ¶ 41.  Cameron had access to this script through Kassar.  Id.

9   ¶ 42.

10       In September 1989, Cameron called Con Kourtis, and told him that he loved

11  the project and his agent, Berg, would be calling him soon.  Id. ¶ 19.  Cameron took

12  some time considering whether to make a film based on the Kourtises' material, and

13  in January 1990, Berg informed Con Kourtis that Cameron was busy but Rosenberg

14  would package the project.  Id. ¶¶ 20-22.  Con Kourtis soon forwarded Rosenberg

15  a second draft script, also written by Green.  Id. ¶ 23.  On August 29, 1990,

16  Rosenberg acknowledged in writing that he had received this script, but stated he

17  could not pursue the project.  Id. ¶ 26.

18       In August 1989, "The Abyss" was released in the United States.  Id. ¶ 44.  It

19  included a water "morphing" scene, added right before release of the movie, that was

20  lifted from "The Minotaur" project.  Id.

21       In April 1991, "Terminator II" was released in the United States.  Id. ¶ 29.  In

22  September 1991, it was released in Australia.  Id.  In late 1991, the Plaintiffs

23  discovered that Cameron, Berg, Rosenberg, ICM, Kassar and others had "stolen their

24  Minotaur Project I, including various ideas as they were expressed in treatments,

25  scripts, and art work" for use in "Terminator II."  Id. ¶ 30.  The full list of similarities

26  between "Terminator II" and "The Minotaur" is detailed in Exhibit 1 of the

27  Complaint.  Id. ¶ 54.

28

1    "Terminator II" continues to gross enormous profits. Id. ¶ 55. The film

2    continues to air on television, DVDs and videos of the film are sold and rented on

3    a regular basis, and products based on the movie, such as video games and action

4    figures, continue to be sold. Id. ¶ 58. At the time of filing of the suit, Kassar

5    anticipated producing "Terminator III," id. ¶ 57, and the Court takes judicial notice

6    that this film has now been completed and released, although it takes no position on

7    whether Kassar (or any other defendant) was involved in its production.

8

9    **B.     Procedural Summary**

10    On April 9, 2002, Plaintiffs filed their Complaint in the United States District

11    Court for the Central District of California, and this action was assigned to Judge A.

12    Howard Matz.

13    On May 3, 2002, the case was transferred to Judge William Matthew Byrne,

14    Jr., for all further proceedings, pursuant to General Order 224.

15    On July 22, 2002, defendants ICM, Green and Rosenberg filed a Notice of

16    Motion and Motion to Dismiss for Failure to State a Claim Upon Which Relief May

17    Be Granted. On August 13, 2002, Kassar was permitted by the Court to join the

18    Motion to Dismiss.

19    On August 12, 2002, Plaintiffs filed an Opposition to the Motion to Dismiss.

20    On August 19, 2002, ICM, Green and Rosenberg filed a Reply to Plaintiffs'

21    Opposition.

22    On May 2, 2003, the Court granted Defendants' Motion to Dismiss and on

23    June 18, 2003, Judgment was entered on behalf of all defendants.

24    Plaintiffs appealed to the Ninth Circuit Court of Appeals, which issued its

25    decision affirming in part and reversing in part the District Court on August 15,

26    2005. See Kourtis v. Cameron, 419 F.3d 989 (9th Cir. 2005).

27    On remand, defendants Cameron and Kassar moved for Plaintiffs to post a

28

1    costs bond before proceeding with this litigation. Cameron filed his Notice of

2    Motion and Motion on December 9, 2005. Kassar filed a Notice of Joinder and

3    Joinder on December 19, 2005. Plaintiffs filed their Opposition on December 27,

4    2005. Cameron filed a Reply on December 29, 2005.

5         On January 24, 2006, the case was reassigned to Judge Dickran Tevrizian for

6    all further proceedings.

7         On January 30, 2006, defendant Kassar filed an Answer to the Complaint.

8         Also on January 30, 2006, defendant Cameron filed a Notion of Motion and

9    Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted.

10    On January 31, 2006, defendants ICM, Berg and Rosenberg filed a Notice of Joinder

11    and Joinder to Cameron's Motion to Dismiss. Plaintiffs have not filed an

12    Opposition. On February 28, 2006, the Court issued an Order taking these motions,

13    the subject of this Order, under submission.

14         On February 14, 2006, the Court granted Cameron's Motion for Plaintiffs to

15    Post a Costs Bond, but denied Kassar's Motion for the same.

16         Pursuant to a Scheduling Order filed by Judge Byrne on November 21, 2005,

17    the current operative dates of this matter are as follows: July 31, 2006 (discovery

18    completed); August 14, 2006 (expert discovery completed); August 28, 2006

19    (motions cut-off date); October 3, 2006 (pre-trial conference); and October 17, 2006

20    (trial).

21

22    **II.**    **Discussion**

23         **A.**    **Standard**

24             1.    Motion to Dismiss for Failure to State a Claim

25         Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may seek

26    to dismiss a claim for "failure to state a claim upon which relief can be granted."

27    Pursuant to Rule 12(b)(6), the court may only dismiss a plaintiff's claim if it appears

28

1    beyond doubt that the plaintiff can prove no set of facts in support of his claim which

2    would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Russell

3    v. Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980).  The question presented by a

4    motion to dismiss is not whether a plaintiff will prevail in the action, but whether a

5    plaintiff is entitled to offer evidence in support of his claim. See Scheuer v. Rhodes,

6    416 U.S. 232, 236 (1974).

7          In considering a motion to dismiss under Rule 12(b)(6), the Court must

8    assume the plaintiff's factual allegations are true, and must construe the complaint

9    in a light most favorable to the plaintiff. See United States v. City of Redwood City,

10   640 F.2d 963, 966 (9th Cir. 1981). The sole issue raised by such a motion is whether

11   the facts pleaded would, if established, support a valid claim for relief.  Therefore,

12   it is only an extraordinary case in which dismissal is proper. Corsican Prods. v.

13   Pitchess, 338 F.2d 441, 442 (9th Cir. 1964).  Dismissal is proper if a complaint is

14   vague, conclusory, and fails to set forth any material facts in support of the

15   allegation. See N. Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 583 (9th Cir.

16   1983).

17         When ruling on the motion, the Court may consider only the following

18   documents: (1) the complaint; (2) any material properly submitted with the

19   complaint, Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19

20   (9th Cir. 1989); and (3) any matters that are properly subject to judicial notice.

21   MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). The Court need

22   not accept as true: (1) any allegation that contradicts facts of which it may take

23   judicial notice, Mullis v. United States Bankr. Court, 828 F.2d 1385, 1388 (9th Cir.

24   1987); (2) any conclusory allegations, unreasonable inferences, or unwarranted

25   deductions of fact, W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981);

26   or (3) any allegation that is contradicted by an exhibit attached to the complaint.

27

28                                            - 6 -

1    Durning v. First Boston Corp., 815 F.2d 1265, 1266 (9th Cir. 1987).[3]

2          Where a motion to dismiss is granted, a district court should provide leave to

3    amend unless it is clear that the complaint could not be saved by any amendment.

4    See Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996).

5              2.    Copyright Law

6          An owner of copyrighted material has the exclusive right to (1) reproduce the

7    copyrighted works, (2) prepare derivative works based upon the copyrighted work,

8    and (3) distribute copies of the copyrighted work.  17 U.S.C. § 106.  In the case of

9    motion picture, the owner also has exclusive rights to (4) perform the work publicly

10   and (5) display the work publicly.  Id.  A derivative work is a work based on one or

11   more pre-existing works in any form in which a work may be recast, transformed or

12   adapted.  Id. § 101.  The distribution of a derivative work, without the permission of

13   the author of the pre-existing work, infringes on the rights of that author.  Id. §

14   103(b); Stewart v. Abend, 495 U.S. 207, 223-25 (1990).  To establish copyright

15   infringement, two elements must be proven: (1) ownership of a valid copyright; and

16   (2) copying of the constituent elements of the work that are original.  Feist Publ'ns,

17   Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Twentieth Centuary Fox Film

18   Corp. v. Entm't Distrib., 429 F.3d 869, 876 (9th Cir. 2005).  Absent direct evidence

19   of copying, proof of infringement can be made by showing (1) the defendant had

20   "access" to the plaintiff's work and (2) the works are substantially similar.  Three

21   Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000).  Copyright law also

22   recognizes both contributory and vicarious infringement. One commits contributory

23   infringement by intentionally inducing or encouraging direct infringement, and one

24   

25        [3] Although a court retains discretion to consider matters outside the pleadings

26   in a Motion to Dismiss under Rule 12(b)(6) (converting the motion into one for

    summary judgment under Rule 56), see Jackson v. S. Cal. Gas Co., 881 F.2d 638, 642

27   n.4 (9th Cir. 1989), the Court will not do so in this instance.

28

1   commits vicarious infringement by profiting from direct infringement while

2   declining to exercise a right to stop or limit it. MGM Studios Inc. v. Grokster Ltd.,

3   ____ U.S. ____, 125 S. Ct. 2764, 2776 (2005).

4        The statute of limitations on claims of copyright infringement is three years.

5   Id. § 507(b). The statute runs from the time plaintiff knows or has reason to know

6   of the defendant's infringement. See Kling v. Hallmark Cards, Inc., 225 F.3d 1030,

7   1038 (9th Cir. 2000). Even if subsequent infringing acts occurred within the three-

8   year period, a plaintiff may not "reach back" and sue for acts otherwise barred by the

9   state of limitations. Roley v. New World Pictures Ltd., 19 F.3d 479, 481 (9th Cir.

10  1994).

11  **B.    Analysis**

12       Plaintiffs must first show ownership of a valid copyright. See Feist, 499 U.S.

13  at 361. Plaintiffs have adequately alleged that they owned the rights to "The

14  Minotaur." Plaintiffs created an original treatment for the film, retained a

15  screenwriter to write two draft scripts based upon their treatment, and later wrote

16  their own draft script. Plaintiffs have shown that they are the proper owners of the

17  rights in the drafts prepared by the screenwriter as well. The Court finds that

18  Plaintiffs have adequately plead ownership of a valid copyright in "The Minotaur."

19       Plaintiffs must also allege the copying of constituent elements of the work that

20  are original. See id. Plaintiffs have not shown direct evidence of copying.

21  However, proof of infringement may still be presented by showing (1) the defendant

22  had "access" to the plaintiff's work and (2) the works are substantially similar. See

23  Three Boys Music Corp., 212 F.3d at 481. Here, Plaintiffs have shown that the

24  defendants had "access" to "The Minotaur." First, Berg told Con Kourtis that he

25  would pass on "The Minotaur" material to Cameron. Second, Kassar had a draft

26  script of "The Minotaur," and he and Cameron would use such materials to

27  collaborate while preparing films. Third, Cameron actually called Con Kourtis

28

1    concerning the script.  These allegations, taken together, are more than sufficient to

2    prove access.

3    　　　　Plaintiffs also present evidence that the works are substantially similar.

4    Specifically, Plaintiffs attach to their Complaint Exhibit 1, which details at least

5    twenty alleged similarities between "Terminator II" and "The Minotaur" treatment

6    and script.   As such, Plaintiffs have adequately plead substantial similarity.

7    Therefore, the Court finds Plaintiffs have adequately plead that the creation of

8    "Terminator II" – the writing and filming of the movie – infringed upon Plaintiffs'

9    work.

10   　　　　However, the crux of this motion concerns whether the statute of limitations

11   has run on Plaintiffs' copyright claims.  The statute of limitations on claims of

12   copyright infringement is three years, see 17 U.S.C. § 507(b), and runs from the time

13   plaintiff knows or has reason to know of the defendant's infringement.  See Kling,

14   225 F.3d at 1038.   Plaintiffs claim they discovered the infringing nature of

15   "Terminator II" in late 1991.  Therefore, Plaintiffs would have been required to file

16   suit for copyright infringement by late 1994.  They did not do so.

17   　　　　However, Plaintiffs claim that "Terminator II" has been continuously

18   infringing their copyright.  Plaintiffs' complaint was filed on April 9, 2002.  Any

19   infringements that are still actionable – that is, are not barred by the statute of

20   limitations – must have occurred on or after April 9, 1999.  See Roley, 19 F.3d at

21   481.  Plaintiffs claim many instances of infringement subsequent to April 9, 1999;

22   to wit, the airing of "Terminator II" on television, the sale and rental of DVDs and

23   videos of "Terminator II," and the marketing and sale of products based on the

24   movie (such as video games and action figures).  If accurate, these appear to properly

25   allege the infringement of Plaintiffs' rights.

26   　　　　However, Plaintiffs' pleadings currently contain a fatal flaw, pointed out by

27   Defendants.  A careful reading of the Complaint shows that no claim has been stated

28

against Cameron, ICM, Berg or Rosenberg during the operative time period. Plaintiffs have not specifically alleged that the Defendants exploited the film, broadcast the film, manufactured DVDs or videos, or otherwise used Plaintiffs' creative materials, on or subsequent to April 9, 1999. Nor do Plaintiffs allege that the Defendants granted any rights to others to do so during this time period. In short, at this time Plaintiffs fail to state a claim against Cameron, ICM, Berg or Rosenberg upon which relief may be granted.

## III.   Conclusion

For the foregoing reasons, the Court **GRANTS without prejudice and with 30 days leave to amend** Cameron, ICM, Berg and Rosenberg's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted.


IT IS SO ORDERED.


DATED:   MAR - 6 2006

DICKRAN TEVRIZIAN
Dickran Tevrizian, Judge
United States District Court

- 10 -