

ENTERED
CLERK, U.S. DISTRICT COURT

MAY - 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

MAY  1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FILIA KOURTIS and
CONSTANTINOS KOURTIS,

          Plaintiffs,

    v.

JAMES CAMERON,
INTERNATIONAL CREATIVE
MANAGEMENT, MARIO KASSAR,
JEFFREY BERG and JOSEPH
ROSENBERG,

          Defendants.

CASE NO. CV 02-2906 DT (RNBx)

ORDER **DENYING** PLAINTIFFS'
MOTION TO VACATE THE
COURT'S ORDER REQUIRING THE
POSTING OF A COSTS BOND AS
TO JAMES CAMERON

ORDER **DENYING** DEFENDANT
JAMES CAMERON'S MOTION TO
DISMISS FOR FAILURE TO POST A
COSTS BOND

ORDER **GRANTING** DEFENDANT
MARIO KASSAR'S RENEWED
MOTION FOR PLAINTIFFS TO
POST A COSTS BOND

I.    **Background**

    A.    **Factual Summary**

    Plaintiffs Filia and Con Kourtis ("Plaintiffs") are authors of the concept of "The Minotaur," an idea for a film. Plaintiffs claim that defendants James Cameron, International Creative Management ("ICM"), Jeffrey Berg, Joseph Rosenberg and Mario Kassar (collectively, "Defendants") copied their idea for a shape-changing character when they created the films "Terminator 2" and "Terminator 3." William Green, the writer plaintiffs hired to convert the Minotaur concept into a screenplay,

1   sued these same defendants, among others, in 1993. <u>Green v. Schwarzenegger</u>, 1995

2   U.S. Dist. LEXIS 14,031 (C.D. Cal. July 11, 1995) (Byrne, J.), <u>aff'd</u>, 107 F.3d 877

3   (9th Cir. 1997).   On July 1, 1994, the Court issued an order granting summary

4   judgment in favor of the defendants on Green's copyright claim, on the ground that

5   "no reasonable factfinder could find that plaintiff's work and 'Terminator 2' are

6   substantially similar under federal copyright law." <u>Green</u>, 1995 U.S. Dist. LEXIS

7   14,031, at *2.

8           Plaintiffs later prevailed in an Australian lawsuit against Green to determine

9   who owned the rights to the Minotaur concept. <u>See</u> <u>Kourtis v. Cameron</u>, 2003 U.S.

10  Dist. LEXIS 26,603, at *5-6 (C.D. Cal. May 2, 2003) (Byrne, J.).   Plaintiffs then

11  filed this action for copyright infringement as well as several state law claims. <u>Id</u>.

12  at *6.   In 2003, the District Court dismissed all claims – the state law claims on

13  statute of limitations grounds, and the copyright claim because it determined

14  collateral estoppel applied. <u>Id</u>. at *22.   Plaintiffs appealed.   The Ninth Circuit

15  affirmed dismissal of the state law claims, but concluded that collateral estoppel did

16  not preclude Plaintiffs from pursuing their copyright claim, and the case was

17  remanded. <u>Kourtis v. Cameron</u>, 419 F.3d 989 (9th Cir. 2005).

18          On February 14, 2006, the Court issued an Order granting Cameron's Motion

19  for Plaintiffs to Post a Costs Bond in the amount of $100,000. <u>Kourtis v. Cameron</u>,

20  Case No. CV 02-2906 DT (RNBx), at p. 9 (C.D. Cal. Feb. 14, 2006) (hereinafter, the

21  "Costs Bond Order").   At the same time, the Court denied Kassar's Motion for

22  Plaintiffs to Post a Costs Bond due to his failure to set forth the "nature and amount"

23  of the requested fees. <u>Id</u>.   On March 6, 2006, the Court issued an Order granting

24  Cameron, ICM, Berg and Rosenberg's Motion to Dismiss without prejudice and with

25  leave to amend within thirty days. <u>Kourtis v. Cameron</u>, Case No. CV 02-2906 DT

26  (RNBx), at p. 10 (C.D. Cal. Mar. 6, 2006) (hereinafter, the "Order of Dismissal").

27  In turn, Plaintiffs filed an Amended Complaint on April 5, 2006.   Plaintiffs have not

28

1   posted the costs bond for Cameron, although they claim that their Amended

2   Complaint vitiates the underlying reasons for which they were ordered to post such

3   a bond.

4   Most of Plaintiffs' Amended Complaint is taken word-for-word from the

5   original Complaint, and just a few paragraphs pertaining to claims that have been

6   dismissed from this case have been dropped.  However, paragraphs 57 through 68

7   contain new or amended facts, pertaining to the history of this matter and the

8   production and release of the film "Terminator 3."  Most pertinently, the Amended

9   Complaint states:

10       60.    On information and belief, Defendants, all of them, have entered

11             into licensing agreements or other agreements whereby a certain

12             amount is paid to them each time money is made on an

13             infringement of copyright through the sales of DVD's, videos,

14             and television showings of ["Terminator 3"], etc., i.e., by

15             controlling the distribution of the film, because they are in a

16             position to control the infringements or they contributed to the

17             infringements they are vicariously liable for all the infringements

18             of copyright which has been going on within the last three years

19             prior to the filing of this lawsuit and continuing into the present.

20       61.    In addition, Kassar went forward and completed the film

21             ["Terminator 3"] while this case was at the District Court level.

22             Thus, the film ["Terminator 3"] was never litigated by Green and

23             is not subject to collateral estoppel doctrine or to the SOL

24             affirmative defense.

25

26

27

28

1   Amended Complaint ¶¶ 60-61.[1] Whereas in the original Complaint Plaintiffs alleged

2   only a general infringement of their copyright, in their Amended Complaint they

3   allege direct, contributory and vicarious infringement. Compare Complaint ¶¶ 60-63

4   with Amended Complaint ¶¶ 62-68. The Amended Complaint does not otherwise

5   explain what aspects of "Terminator 3" infringed on "The Minotaur."

6        There are now three pending motions before the Court, the resolutions of

7   which are co-dependent. First, defendant Kassar filed a motion to renew or

8   reconsider the Court's ruling not requiring Plaintiffs to post a costs bond as to

9   Kassar. Second, Plaintiffs filed a motion seeking to vacate the Court's Order

10  requiring them to post a costs bond as to defendant Cameron. Third, defendant

11  Cameron filed a motion to dismiss for Plaintiffs' failure to post the required costs

12  bond. The Court will address all three motions at this time.[2]

13

14       [1] Additionally, paragraph 55 of the Amended Complaint states: "Ms.
15  Abramowitz goes on to describe the process by which Kassar bought Carolco's
16  'franchise' rights in ["Terminator 2"] anticipating producing ["Terminator 3"] which
    continues the morphing and shape changing mass as was done in ["Terminator 2."]
17  Amended Complaint ¶ 55. This identical to paragraph 57 of the original Complaint,
18  and refers to an article written prior to the production of "Terminator 3."

19       [2] Under Local Rule 7-3,
20       counsel contemplating the filing of any motion shall first contact
         opposing counsel to discuss thoroughly, *preferably in person,* the
21       substance of the contemplated motion and any potential resolution . . .
         If the parties are unable to reach a resolution which eliminates the
22       necessity for a hearing, counsel for the moving party shall include in the
         notice of motion a statement to the following effect: This motion is
23       made following the conference of counsel pursuant to L.R. 7-3 which
24       took place on (date).
25  (emphasis in original). None of the three motions that are the subject of this Order
26  included such a statement in its Notice of Motion, and presumably, none of the
    motions were brought following a conference of counsel (although Cameron's
27  counsel, Charles Shephard, did communicate several times with Plaintiffs' counsel,

28                                    - 4 -

**B.    Procedural Summary**

On April 9, 2002, Plaintiffs filed their Complaint in the United States District Court for the Central District of California, and this action was assigned to Judge A. Howard Matz.

On May 3, 2002, the case was transferred to Judge William Matthew Byrne, Jr. for all further proceedings, pursuant to General Order 224.

On July 22, 2002, defendants ICM, Green and Rosenberg filed a Notice of Motion and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.  On August 13, 2002, Kassar was permitted by the Court to join the Motion to Dismiss.

On May 2, 2003, the Court granted Defendants' Motion to Dismiss and on June 18, 2003, Judgment was entered on behalf of all Defendants.

Plaintiffs appealed to the Ninth Circuit Court of Appeals, which issued its decision affirming in part and reversing in part the District Court on August 15, 2005.

On remand, defendants Cameron and Kassar moved for Plaintiffs to post a costs bond before proceeding with this litigation.  Cameron filed his Notice of Motion and Motion on December 9, 2005.  Kassar filed a Notice of Joinder and Joinder on December 19, 2005.

On January 24, 2006, the case was reassigned to Judge Dickran Tevrizian for all further proceedings.

On January 30, 2006, defendant Kassar filed an Answer to the Complaint.

Also on January 30, 2006, defendant Cameron filed a Notion of Motion and Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted.

---

Patricia Barry, prior to the filing of Cameron's Motion to Dismiss).  Although the Court considers these motions today, going forward, the parties are warned that the Court will deny any further motions that do not comply with Local Rule 7-3.

1   On January 31, 2006, defendants ICM, Berg and Rosenberg filed a Notice of Joinder
2   and Joinder to Cameron's Motion to Dismiss.

3   On February 14, 2006, the Court issued an Order granting Cameron's Motion
4   for Plaintiffs to Post a Costs Bond, and denying Kassar's Motion for the same.

5   On March 6, 2006, the Court granted Cameron, ICM, Berg and Rosenberg's
6   Motion to Dismiss without prejudice and with leave to amend within thirty days.

7   On March 20, 2006, Kassar filed a Notice of Motion and Motion for
8   Reconsideration of the Court's Order denying his Motion for Plaintiffs to Post a
9   Costs Bond. On April 17, 2006, Plaintiffs filed their Opposition. On April 24, 2006,
10  Kassar filed his Reply.

11  On March 30, 2006, Cameron filed an Ex Parte Application for an Order of
12  Dismissal due to Plaintiff's Failure to Post a Costs Bond.

13  On April 5, 2006, Plaintiffs filed their First Amended Complaint.

14  On April 5, 2006, Plaintiffs also filed an Notice of Motion and Motion to
15  Vacate the Court's Order for Plaintiffs to Post a Costs Bond. On April 17, 2006,
16  Cameron filed his Opposition. A Reply has not been filed.

17  On April 6, 2006, the Court denied Cameron's Ex Parte Application for
18  Dismissal, without prejudice to file a properly-noticed motion.

19  On April 10, 2006, Cameron filed a Notice of Motion and Motion for
20  Dismissal due to Plaintiff's Failure to Post a Costs Bond. On April 17, 2006,
21  Plaintiffs filed their Opposition. On April 24, 2006, Cameron filed his Reply.

22  On April 18, 2006, defendants ICM, Berg and Rosenberg filed an Answer to
23  the First Amended Complaint. On the same day, defendant Kassar filed an Answer
24  to the First Amended Complaint.

25

26

27

28

1 **II.    Discussion**

2      **A.    Standards**

3           1.    Costs Bonds

4           Federal courts may require plaintiffs to post a bond in order to provide

5  security for defendants who might prevail in litigation.  See Simulnet E. Assocs. v.

6  Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994).  A district court

7  normally follows the forum state's practice, particularly when the party is a non-

8  resident.  See id.; In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1121

9  (9th Cir. 1987).

10          In California:

11          When the plaintiff in an action or special proceeding resides out of the

12          state, or is a foreign corporation, the defendant may at any time apply

13          to the court by noticed motion for an order requiring the plaintiff to file

14          an undertaking to secure an award of costs and attorney's fees which

15          may be awarded in the action or special proceeding.  For the purposes

16          of this section, "attorney's fees" means reasonable attorney's fees a

17          party may be authorized to recover by a statute apart from this section

18          or by contract.

19  Cal. Civ. Proc. Code § 1030(a).  The defendant must also show there is a "reasonable

20  possibility" that the defendant will obtain judgment.  Id. § 1030(b).  The defendant's

21  motion must be accompanied by an affidavit setting "forth the nature and amount of

22  the costs and attorney's fees the defendant has incurred and expects to incur by the

23  conclusion of the action or special proceeding."  Id.  If the Court determines that

24  grounds for the motion have been established, it shall order the plaintiff to file an

25  undertaking for the amount specified in its order.  Id. § 1030(c).  California

26  recognizes attorney's fees as costs when properly authorized.  Id. § 1033.5(a)(10).

27          This undertaking must be filed not later than thirty days after service of the

28

1    court's Order requiring it, or within a greater time allowed by the Court. <u>Id</u>. §

2    1030(d). If the plaintiff fails to file the undertaking within the time allowed, the

3    plaintiff's action <u>shall</u> be dismissed as to the defendant in whose favor the Order

4    requiring the undertaking was made. <u>Id</u>. However, failure to file within a proscribed

5    time is not jurisdictional, and the court may accept a late filing at its discretion. <u>See</u>

6    <u>Boyer v. County of Contra Costa</u>, 235 Cal. App. 2d 111, 115 (1965). Furthermore,

7    a dismissal caused by a failure to file an undertaking only occurs following a

8    properly-noticed motion. <u>Id</u>.; <u>Shell Oil Co. v. Superior Court of Sonoma County</u>, 2

9    Cal. App. 2d 348, 354 (1934).

10         A court may also determine that the amount of a bond is excessive and order

11    such amount reduced under its discretion, as long as the order is subject to any

12    limitations in the statute providing for the bond. Cal. Civ. Proc. Code § 996.030(a).

13    This determination shall be made upon a properly-noticed motion, and the moving

14    party may then submit a bond in the new amount. <u>Id</u>. §§ 996.030(b)-(c). The court

15    may, in its discretion, allow this new bond to be posted by the end of a period not

16    less than five days. <u>Id</u>. §§ 996.010(c); 996.030(b).

17              2.    <u>Relief from Judgment or Order</u>

18         Federal Rule of Civil Procedure 60(b) states: "On motion and upon such

19    terms as are just, the court may relieve a party or a party's legal representative from

20    a final judgment, order or proceeding for the following reasons . . . (6) any other

21    reason justifying relief from the operation of the judgment." Rule 60(b)(6) "does not

22    particularize the factors that justify relief, but . . . it provides courts with authority

23    'adequate to enable them to vacate judgments whenever such action is appropriate

24    to accomplish justice' [although] it should only be applied in 'extraordinary

25    circumstances.'" <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 863

26    (1988) (citations omitted). "Rule 60(b)(6) relief normally will not be granted unless

27    the moving party is able to show both injury and that circumstances beyond its

28

1   control prevented timely action to protect its interests." United States v. Alpine

2   Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1997).

3        While subsection (6) has occasionally been characterized in broad terms, see

4   United States v. Sparks, 685 F.2d 1128, 1130 (9th Cir. 1982) (quoting Klapprott v.

5   United States, 335 U.S. 601, 615 (1949)) (Rule 60(b)(6) "gives the district court

6   power to vacate judgments 'whenever such action is appropriate to accomplish

7   justice'"), the Ninth Circuit has repeatedly admonished that relief under Rule

8   60(b)(6) is only appropriate where there exists "exceptional circumstances."

9   See Sparks, 685 F.2d at 1130 (quoting Ackerman v. United States, 340 U.S. 193, 199

10  (1950)); Allamerica Fin. Life Ins. & Annuity Co. v. Llewellyn, 139 F.3d 664, 665

11  (9th Cir. 1998) (quoting Ackerman, 340 U.S. at 199). Put otherwise, Rule 60(b)(6)

12  "has been used sparingly as an equitable remedy to prevent manifest injustice. The

13  rule is to be utilized only where extraordinary circumstances prevented a party from

14  taking timely action to prevent or correct an erroneous judgment." Alpine Land &

15  Reservoir Co., 984 F.2d at 1049 (9th Cir. 1993).

16       3.    Motion for Reconsideration

17       A motion for reconsideration of the decision of any motion may be made on

18  one of only three grounds:

19       (a) a material difference in fact or law from that presented to the Court

20       before such decision that in the existence of reasonable diligence could

21       not have been known to the party moving for reconsideration at the

22       time of such decision, or (b) the emergence of new material facts or a

23       change of law occurring after the time of such decision, or (c) a

24       manifest showing of a failure to consider material facts presented to the

25       Court before such decision.

26  Local Rule 7-18.

27

28                    - 9 -

**B.   Analysis**

   1.   <u>Procedural Determinations</u>

      a.   Plaintiffs' Costs Bond As It Concerns Cameron

Plaintiffs bring their motion to vacate the Court's Order pursuant to Federal Rule of Civil Procedural 60(b)(6), which is normally reserved for "extraordinary circumstances." See <u>Liljeberg</u>, 486 U.S. at 863. Without analyzing either the intent of Rule 60(b)(6) or precedent construing it, the Court is highly dubious that the filing of an amended complaint is an extraordinary circumstance that would justify this motion. Regardless, Rule 60(b) "applies only to motions attacking final, appealable orders." <u>See, e.g.</u>, <u>United States v. Martin</u>, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) (citing cases). However, an order granting a motion for a nonresident to post a costs bond is non-appealable. Cal. Civ. Proc. Code § 1030(g). Therefore, Plaintiffs' motion may not be brought under Rule 60(b)(6).

However, Plaintiffs are not limited to Rule 60(b)(6). First, as Cameron points out, Plaintiffs' motion could have been brought as a motion for reconsideration under Local Rule 7-18. The filing of Plaintiffs' amended complaint added new facts to its claims in this matter. These new facts materially differ from those found in the original complaint. The Court believes this serves as "the emergence of new material facts . . . occurring after the time of" the Court's original decision, as required under Rule 7-18(b).

Second, a district court normally follows the forum state's practice regarding the filing of costs bonds, particularly when the party is a non-resident. See <u>Simulnet E. Assocs.</u>, 37 F.3d at 574; <u>Merrill Lynch Relocation Mgmt.</u>, 812 F.2d at 1121. California procedure permits a party to file a motion asking the Court to determine that the amount of a bond is excessive and order such amount reduced under its discretion, as long as the order is subject to any limitations in the statute providing for the bond. Cal. Civ. Proc. Code §§ 996.030(a)-(b). This would be the practical

1   effect of Plaintiffs' motion, if granted. Therefore, the Court deems Plaintiffs' motion

2   as one properly filed under section 996.030 and/or Rule 7-18(b).

3       Additionally, the Court notes that Plaintiffs' and Cameron's motion are

4   incompatible.  Essentially, if one is granted, at least in full, then the other is

5   realistically moot.  Therefore, the Court must determine how to consider both

6   motions at this time.

7       It is undisputed that Plaintiffs have not filed the costs bond as ordered by the

8   Court on February 14, 2006, and certainly did not file such a bond within the thirty-

9   day period required by California Civil Procedure Code section 1030(d).  However,

10  Plaintiffs believe that their Amended Complaint has vitiated a need for such a bond.

11  At the same time, Cameron has moved for dismissal of the claim against him, due

12  to Plaintiffs' failure to post the bond within the required thirty-day period.

13      Because dismissal due to failure to post a costs bond is not self-executing –

14  that is, dismissal may only occur after a properly-noticed motion, see Boyer, 235 Cal.

15  App. 2d at 115; Shell Oil Co., 2 Cal. App. 2d at 354 – this Court may only consider

16  dismissal as of the date on which Cameron filed his motion.  Because Plaintiffs filed

17  their motion to vacate the costs bond requirement prior to that date, the Court will

18  consider Plaintiffs' motion first.[3]  Therefore, if Plaintiffs can successfully convince

19  the Court to vacate its Order, then Cameron's motion will be moot.[4]

20

21      [3] Cameron's improper March 30, 2006 filing of an Ex Parte Application for an
22  Order of Dismissal has no bearing on this determination.

23      [4] Although the Court will first address Plaintiffs' Motion to Vacate, it must
24  express its concern about the disregard Plaintiffs, and their counsel, have shown for
    the Court's Order of February 14.  Plaintiffs were ordered to post a costs bond in the
25  manner specified by the California Civil Procedure Code, i.e., within thirty days, or
26  by March 16.  That time went by with no action by Plaintiffs.  They did not post a
    costs bond.  They did not move to vacate or amend the Court's Order.  And they did
27  not file an amended complaint, which might have given them a basis to so move,

28

1              b.    Kassar's Motion for Plaintiffs to Post a Costs Bond

2          This Court previously denied Defendant Kassar's Motion for Plaintiffs to Post

3     a Costs Bond.    At that time, the Court found that there was "a 'reasonable

4     possibility' that Kassar will prevail by showing 'Terminator 2' and 'The Minotaur'

5     are not substantially similar." Costs Bond Order, at p. 5. Despite a costs bond being

6     available to Kassar, though, the Court noted:

7              Kassar has not properly set forth "the nature and amount of the costs

8              and attorney's fees the defendant has incurred and expects to incur by

9              the conclusion of the action," as required by California Civil Procedure

10             Code section 1030(b).  More information is required before the Court

11             can examine the reasonableness of Kassar's request, and therefore, the

12             Court cannot determine a proper bond amount as to Kassar at this time.

13             As such, Kassar's motion is denied.

14    Id. at p. 8.

15         Kassar now bring a motion to either renew or reconsider his previous motion.

16    Kassar has submitted information – a declaration of his counsel, Howard Horwitz –

17    that he contends will remedy his earlier omission.  The Court sees no reason why

18    Kassar may not renew his previous motion, or alternatively have the Court

19    reconsider it under Local Rule 7-18(b), at this time.

20         However, as Plaintiffs have filed an amended complaint since the filing of

21    Kassar's renewed motion, the Court must necessarily consider Kassar's motion as

22    it pertains to the amended complaint.

23    _____

24    within that time. Instead, Plaintiffs waited until April 5 – twenty days after the period
      proscribed by state law expired – to file their current motion and their Amended
25    Complaint. The Court is disappointed in Plaintiffs' actions, which reek of self-help.
26    At the least, a timely motion to vacate, or alternatively posting the required bond prior
      to the deadline and present motion, would have avoided the costly and unnecessary
27    duplicate motions before the Court.

28                                       - 12 -

2.   <u>Plaintiffs' Motion to Vacate the Costs Bond Order</u>

On February 14, 2006, the Court ordered that Plaintiffs post a costs bond in favor of Cameron based on two separate grounds upon which it found that Cameron had a reasonable possibility of obtaining judgment: first, that it was likely the Court would find that "The Minotaur" and "Terminator 2" are not substantially similar under federal copyright law, based on its findings in the related <u>Green</u> case;[5] and second, that Plaintiffs' claim was barred by the statute of limitations for copyright violations. Since that time, Plaintiffs have submitted an amended complaint. They believe that their amendments have cured whatever defects caused the Court to order the costs bond in the first place.

First, the Court does not believe that the amendments have directly cured either of the two grounds upon which the Court found Cameron had a reasonable possibility of obtaining judgment.[6] First, Plaintiffs' amended complaint has added no new facts concerning "Terminator 2." Several months ago, this Court noted:

> The Court has already determined that "no reasonable factfinder could
>
> find that ['The Minotaur'] and 'Terminator 2' are substantially similar

---

[5] Plaintiffs apparently misconstrue the Court's Costs Bond Order. They state that the "Court granted the motion based on Defendant Cameron's similarity/collateral estoppel . . . argument[]." <u>Motion to Vacate</u>, at pp. 1-2. But collateral estoppel had nothing to do with it. The standard is simply a "reasonable possibility" of obtaining judgment. The Court noted that, in a previous litigation, it had compared the two works and found that they lacked substantial similarity as a matter of law. <u>Costs Bond Order</u>, at pp. 5-6. It commented that, if provided the same evidence and arguments it had been in the earlier litigation, there was no reason to believe the results would be any different. <u>Id</u>. at p. 5. It then went out of its way to point out that its "determinations do not mean that the Moving Defendants will ultimately prevail. Discovery can unearth unexpected evidence, and new arguments can be persuasive." <u>Id</u>. at p. 6 n.1. In no way are Plaintiffs collaterally estopped from arguing the substantial similarity of "The Minotaur" and "Terminator 2."

[6] Plaintiffs do not contend that they no longer reside out of state.

- 13 -

1       under federal copyright law." <u>Green</u>, 1995 U.S. Dist. LEXIS 14,031,

2       at *2. Plaintiffs may reassert this claim, and they maintain the result

3       will be different this time, but their Opposition is not persuasive that

4       any new evidence will alter the Court's prior analysis. The Court finds

5       it is at least a "reasonable possibility" that the works are not

6       substantially similar.

7  <u>Costs Bond Order</u>, at p. 5. Nothing has changed since that time. Therefore, the

8  Court maintains its finding that it is a reasonable possibility that Cameron will

9  prevail by showing "The Minotaur" and "Terminator 2" are not substantially similar.

10      Second, the Court also noted:

11       there is a "reasonable possibility" there is a statute of limitations bar as

12       to Cameron . . . Cameron declared that his work on "Terminator 2"

13       ended around 1991, and he has not been involved in its distribution at

14       any time since then . . . This is well outside the limitations period, and

15       at this time the Plaintiffs present no evidence showing any of

16       Cameron's conduct falls within the limitations period.

17  <u>Id</u>. Once again, nothing has changed since that time. Therefore, the Court maintains

18  its finding that it is a reasonable possibility that Cameron will prevail on his

19  limitations defense, in that any of his conduct relating to "Terminator 2" ended

20  before April 9, 1999.

21      In their Amended Complaint, though, Plaintiffs add what essentially amounts

22  to an entirely new cause of action against the Defendants, including Cameron. The

23  Amended Complaint alleges that "Terminator 3" infringes upon "The Minotaur."

24  Furthermore, according to Plaintiffs, because "Terminator 3" was created within the

25  applicable statute of limitations, and because it was not the subject of the earlier

26  <u>Green</u> lawsuit, there is not a "reasonable possibility" that Cameron will prevail.

27      First, the Court notes that Plaintiffs' two factual contentions are correct. The

28

1  limitations period for any claims for infringement based on "Terminator 3" had not
2  run at the time of the filing of this lawsuit. <u>See</u> 17 U.S.C. § 507(b) (limitations
3  period of three years).  Additionally, the potential infringement of "Terminator 3"
4  was not litigated in the earlier lawsuit. However, the Court disagrees with Plaintiffs'
5  ultimate conclusion.

6       Specifically, the Court finds that Cameron has a reasonable possibility of
7  prevailing on Plaintiffs' claims that "Terminator 3" infringed their work. Although,
8  in their Amended Complaint, Plaintiffs add allegations concerning "Terminator 3,"
9  nowhere do they explain which aspects of the sequel are infringing.  In fact, attached
10  to Plaintiffs' original Complaint is Exhibit I, which lists twenty alleged similarities
11  between "The Minotaur" and "Terminator 2."  This exhibit has been excised from
12  Plaintiffs' Amended Complaint, and there is no similar listing of similarities between
13  "Terminator 3" and "The Minotaur."   Absent such allegations or any other
14  information concerning the alleged infringement, the Court will assume, taking all
15  inferences in favor of Plaintiffs, that "Terminator 3" allegedly infringed "The
16  Minotaur" in the same manner as "Terminator 2" allegedly did in the original
17  complaint.

18       For the same reasons, then, it is a "reasonable possibility" that Plaintiffs' claim
19  will fail. The Court has already determined that "no reasonable factfinder could find
20  that ['The Minotaur'] and 'Terminator 2' are substantially similar under federal
21  copyright law." <u>Green</u>, 1995 U.S. Dist. LEXIS 14,031, at *2. When doing so, the
22  Court closely compared the similarities alleged by Green and found them lacking.
23  Once again, Plaintiffs are not collaterally estopped from pursuing their copyright
24  infringement claim, <u>Kourtis</u>, 419 F.3d at 999, nor are they precluded from submitting
25  new evidence or making new arguments to the Court. <u>Costs Bond Order</u>, at p. 5.
26  However, neither Plaintiffs' Amended Complaint nor its Motion and Oppositions are
27
28

persuasive that any new evidence or arguments will alter the Court's prior analysis.[7] Given that, in the prior case, the Court determined that "no reasonable factfinder" could find the works substantially similar, it is at least a "reasonable possibility" that they will be found not substantially similar in this matter.

Plaintiffs seem to believe that, by claiming that "Terminator 3" infringed "The Minotaur," the Green decision will have no ongoing relevance, but that belief is misplaced. If Plaintiffs allege that "Terminator 3" infringes "The Minotaur" in the same manner that "Terminator 2" did – the Court cannot see any other reasonable conclusion from Plaintiffs' submissions – and the Court has already determined that "no reasonable factfinder" could find the works "Terminator 2" and "The Minotaur" substantially similar, then it stands to follow that no reasonable factfinder could find the works "Terminator 3" and "The Minotaur" substantially similar either. Once again, collateral estoppel does not apply, and there is no guarantee that this will be the ultimate conclusion in this matter. But, as of now, it is a reasonable possibility that "Terminator 3" and "The Minotaur" are not substantially similar, and that Cameron will prevail on this issue.

The addition of discrete claims of contributory and vicarious infringement by Cameron do not alter this analysis. Each still requires direct infringement by the primary infringer. MGM Studios, Inc. v. Grokster, Ltd., 380 F.3d 1154, 1160, 1164 (9th Cir. 2004), rev'd on oth. grounds, 545 U.S. _____, 125 S. Ct. 2764 (2005). Direct infringement, in turn, requires proof of substantial similarity, at least in the absence of direct evidence of copying, see, e.g., Swirsky v. Carey, 376 F.3d 841, 844 (9th Cir. 2004), evidence which is not present here. If "Terminator 3" is not substantially similar to "The Minotaur," then it would eliminate these claims of

---

[7] In fact, despite Cameron's arguments and the Court's Costs Bond Order, Plaintiffs do not point to any new arguments or evidence that might change the factfinder's determination.

vicarious and contributory infringement as well.[8]

Therefore, the Court finds there is a "reasonable possibility" that Cameron will obtain judgment on Plaintiffs' Amended Complaint.[9]

---

[8] Cameron additionally submits a declaration stating that he had no involvement in "Terminator 3," has not entered into licenses or other agreements concerning "Terminator 3," and is not entitled to and has not received compensation due to "Terminator 3." Cameron Decl., at ¶ 2-4. The Court need not consider Cameron's arguments based on these statements.

[9] Although not addressed by either party, the Court is additionally unsure of the propriety of Plaintiffs' amendments to their original Complaint. The Court stated in its Order of Dismissal:

... [T]he crux of this motion concerns whether the statute of limitations has run on Plaintiffs' copyright claims. The statute of limitations on claims of copyright infringement is three years, see 17 U.S.C. § 507(b), and runs from the time plaintiff knows or has reason to know of the defendant's infringement. See Kling, 225 F.3d at 1038. Plaintiffs claim they discovered the infringing nature of "Terminator II" in late 1991. Therefore, Plaintiffs would have been required to file suit for copyright infringement by late 1994. They did not do so.

However, Plaintiffs claim that "Terminator II" has been continuously infringing their copyright. Plaintiffs' complaint was filed on April 9, 2002. Any infringements that are still actionable – that is, are not barred by the statute of limitations – must have occurred on or after April 9, 1999. See Roley, 19 F.3d at 481. Plaintiffs claim many instances of infringement subsequent to April 9, 1999; to wit, the airing of "Terminator II" on television, the sale and rental of DVDs and videos of "Terminator II," and the marketing and sale of products based on the movie (such as video games and action figures). If accurate, these appear to properly allege the infringement of Plaintiffs' rights.

However, Plaintiffs' pleadings currently contain a fatal flaw, pointed out by Defendants. A careful reading of the Complaint shows that no claim has been stated against Cameron, ICM, Berg or Rosenberg during the operative time period. Plaintiffs have not specifically alleged that the Defendants exploited the film, broadcast the film, manufactured DVDs or videos, or otherwise used Plaintiffs' creative materials, on or

- 17 -

1       Because Plaintiffs continue to reside out-of-state, there is a "reasonable

2   possibility" that Cameron will prevail in this action, and attorneys' fees and costs

3   may be awarded, a costs bond remains proper as to Cameron. Additionally,

4   Plaintiffs present no arguments in addition to those addressed above concerning the

5   continued vitality of the $100,000 amount as set by the Court in its Costs Bond

6   Order. Therefore, the Court finds that the requirement that Plaintiffs post a costs

7   bond in the amount of $100,000 remains proper, and denies Plaintiffs' motion.

8               3.   Cameron's Motion to Dismiss

9       Although California Civil Procedure Code section 1030(d) requires any Court-

10   ordered costs bond to be filed within thirty days, Plaintiffs failed to file within the

11   required time period. Furthermore, although Plaintiffs attempted to vacate the Costs

12   Bond Order, the Court has denied their motion. For these reasons, the Court may

13   consider Cameron's motion to dismiss at this time.

14

15

16       subsequent to April 9, 1999. Nor do Plaintiffs allege that the
    Defendants granted any rights to others to do so during this time period.

17       In short, at this time Plaintiffs fail to state a claim against Cameron,
    ICM, Berg or Rosenberg upon which relief may be granted.

18   Id. at pp. 9-10. In sum, Plaintiffs failed to link the conduct of Defendants to the

19   allegedly infringing actions concerning "Terminator 2" during the post-April 9, 1999

20   period.

    Although the Court granted Defendants' Motion to Dismiss, it did so without

21   prejudice and gave Plaintiffs leave to amend within thirty days. Plaintiffs thereafter

22   filed their Amended Complaint during this thirty-day period. Instead of amendments
meant to cure the flaw pointed out by the Court (concerning the lack of linkage of the

23   Defendants to the exploitation of "Terminator 2" during the operative time period),

24   Plaintiffs' amendments instead added claims of infringement concerning "Terminator
3" during that time period. This was somewhat confusing, as it was unclear whether

25   the few references to "Terminator 3" in the original Complaint constituted claims

26   based upon that film. At the least, the Court questions the propriety of Plaintiff's
amendments. This, though, is an issue for the parties to examine, and it is not

27   pertinent to the Court's determinations concerning the present motions.

28

1  As noted earlier, the Court is disappointed in the manner in which Plaintiffs
2  have proceeded concerning the Court's prior Costs Bond Order. Nevertheless, it
3  realizes that Plaintiffs may have believed changed circumstances might have
4  convinced the Court to vacate its previous Order, or at the least reduce the amount
5  awarded. For this reason, and given the drastic remedy for failure to post a costs
6  bond, the Court will exercise its discretion under section 1030(d) that permits an
7  undertaking to be filed within a time greater than thirty days as allowed by the Court,
8  and will permit Plaintiffs ten days from the date of this Order to file a costs bond as
9  to Cameron in the amount of $100,000.[10] See also Boyer, 235 Cal. App. 2d at 115
10  (court may accept a late filing at its discretion). If Plaintiffs do not file such a bond
11  within that period, the Court will permit Cameron to renew his motion to dismiss
12  without briefing it anew, and it is likely that Cameron will be dismissed from this
13  action.

14  At this time, Cameron's motion is denied, although he may renew it under the
15  circumstances set forth in the preceding paragraph. Plaintiffs shall file the costs
16  bond within ten days.

17      4.   Kassar's Renewed Motion for Plaintiffs to Post a Costs Bond
18  Kassar previously proved that there was a "reasonable possibility" that Kassar
19  would obtain judgment by showing "Terminator 2" and "The Minotaur" are not
20  substantially similar. Costs Bond Order, at p. 5. Kassar now provides the Court
21  additional information concerning the reasonableness of his proposed bond so that
22  the Court might set a proper amount.

23  As noted above, Kassar filed his Motion to Renew or Reconsider his previous
24

25  [10] In their Oppositions, Plaintiffs stated that they intended to file an Application
26  to Proceed with Waiver of Costs, based on their indigence, along with their Reply.
27  Neither this Reply nor any Application has been received by the Court, and cannot be considered in this Order.

28  - 19 -

1    motion on March 20, 2006.  Since that time, Plaintiffs have filed an Amended

2    Complaint.  Therefore, the Court must consider Kassar's motion as it pertains to the

3    Amended Complaint.

4         The Court previously determined that Kassar was entitled to a costs bond

5    because (1) Plaintiffs resided in Australia, *i.e.*, out of state, and (2) there was a

6    "reasonable possibility" that he would obtain judgment in this action because, in the

7    Green litigation, the Court had already determined that no reasonable factfinder

8    could find the works substantially similar.  Costs Bond Order, at pp. 4-6.  Plaintiffs

9    have done nothing to alter this analysis.  They still reside out of state, and they have

10   provided no new evidence or arguments to negate the fact that the Green litigation

11   still suggests that Plaintiffs cannot prove "Terminator 2" and "The Minotaur" are

12   substantially similar.

13        In the intervening time, of course, Plaintiffs filed their Amended Complaint,

14   adding claims based on the release of "Terminator 3."  However, the Court believes

15   that, for the same reasons expressed in Section II.B.2 of this Order, there is a

16   reasonable possibility that Kassar will obtain judgment on the claims concerning that

17   film.  Specifically, even when construing the complaint in the light most favorable

18   to Plaintiffs, the Court has already examined the elements of "Terminator 3" (as they

19   appeared in "Terminator 2") that are alleged to infringe "The Minotaur," and found

20   them lacking when used to prove substantial similarity between the two works.

21        Because Plaintiffs continue to reside out-of-state, there is a "reasonable

22   possibility" that Kassar will prevail in this action, and attorneys' fees and costs may

23   be awarded, a costs bond may be awarded as to Kassar.

24        Although the Court previously found that a bond was appropriate in the Costs

25   Bond Order, it determined that Kassar did not properly set forth "the nature and

26   amount of the costs and attorney's fees the defendant has incurred and expects to

27   incur by the conclusion of the action," as required by California Civil Procedure

28

1   Code section 1030(b), and denied his motion. <u>Costs Bond Order</u>, at p. 8. It also

2   stated that "[m]ore information is required before the Court can examine the

3   reasonableness of Kassar's request." <u>Id</u>. In response, Kassar has submitted a new

4   Declaration of his attorney, Howard Horwitz, which attempts to remedy this deficit.

5   Kassar also increased the bond amount requested from $125,000 to $150,000.

6        Under California Civil Procedure Code section 1030(a), Plaintiffs are required

7   to furnish any and all costs which <u>may</u> be awarded in this proceeding.  That would

8   suggest that, if otherwise appropriate, they should file an undertaking for the full

9   amount requested by the Moving Defendants.  However, <u>Gonzales v. Fox</u>, 137 Cal.

10  Rptr. 312, 313 (App. Dep't Super. Ct. 1977), requires the Court to consider (1) the

11  validity of the claim, (2) the reasonableness of the bond, and (3) the ability of the

12  person to furnish the bond.  <u>See also</u> <u>Beaudreau v. Superior Ct. of Los Angeles</u>

13  <u>County</u>, 14 Cal. 3d 448, 459 (1975) (same requirements for different undertaking

14  statute).[11]

15        In his original declaration, filed concurrently with Kassar's original Motion

16  for Plaintiffs to Post a Costs Bond, Horwitz stated that he anticipated Kassar "will

17  be able to join in Motions filed by [his] co-Defendants, reducing the amount of

18  attorneys' fees that would otherwise be incurred in bringing such a Motion."

19  <u>Horwitz Decl. (12/19/05)</u>, at ¶ 4.  His estimate of attorneys' fees was reduced due to

20  such anticipated joinders. <u>Id</u>. at ¶ 5.  The Order of Dismissal later dismissed all of

21  Kassar's co-Defendants from the case, but without prejudice and with leave to

22  amend within thirty days.  Horwitz's recent declaration was executed and filed

23  following that dismissal.  In it, Horwitz declares that the dismissal of Kassar's co-

24  Defendants "may increase Mr. Kassar's likely fees," as "there is a strong likelihood

25

26   _____

27   [11] The validity of the claim, as it relates to these considerations, is discussed
     <i>infra</i>.

28
                                    - 21 -

1   that Mr. Kassar will be the only remaining defendant in the case." <u>Horwitz Decl.</u>

2   <u>(3/16/06)</u>, at ¶ 6.  Since that time, Plaintiffs filed their Amended Complaint, which

3   reinstated claims against Kassar's co-Defendants.  For this reason, Horwitz's

4   estimates of Kassar's litigation costs, found in his March 16, 2006 declaration,

5   appear to once again be inflated (although not at the time they were written).  The

6   Court sees no reason why, if Kassar previously planned to join in much of the work

7   performed by Kassar's co-Defendants' counsel, he could not do so now.

8   Nevertheless, the Court believes there is enough information to determine a proper

9   bond amount.

10          In his previous motion,

11          Kassar ask[ed] for a bond of $125,000. His attorney, Howard Horwitz,

12          is an experienced entertainment attorney, and estimates that a full

13          defense, through trial, would cost $250,000, but cuts that in half

14          because he anticipates the matter will be resolved prior to trial.

15          <u>Horwitz Decl. [12/19/05]</u>, at ¶ 5.  Kassar's amount is less that of

16          Cameron because Horwitz believes he will simply be able to join in

17          motions filed by co-defendants – as he does in the current motion – but

18          will not be able to join in work for discovery or trial.  <u>Id</u>. at ¶ 4.

19          Horwitz does not further describe how he reached the $250,000 figure.

20   <u>Costs Bond Order</u>, at pp. 7-8.  In his current motion, Horwitz estimates that a full

21   defense, through trial, would cost more than $300,000.  <u>Horwitz Decl. (3/16/06)</u>, at

22   ¶ 10.  He states that his client has already accumulated more than $23,300 in fees.

23   <u>Id</u>. at ¶ 8.  He also anticipates fees of $125,000 for ongoing discovery, $25,000 for

24   a motion for summary judgment, and $150,000 if the case proceeds to trial.  <u>Id</u>. He

25   still does not list the rate at which he bills clients.

26          Plaintiffs do not submit any new evidence concerning their ability to furnish

27   a bond.  In a declaration filed in Opposition to Kassar's original motion, the

28

                                        - 22 -

1   Kourtises, who are husband and wife, claimed their joint income was approximately
2   $1,600/month (without indicating their respective savings) and stated they did not
3   have the money to post a bond of $125,000 (or of greater amounts). Con Kourtis
4   Decl., at ¶ 2. On one hand, this is a reason to lower the amount of the bond; on the
5   other, it certainly would make it more difficult for Kassar to collect awarded
6   attorneys' fees and costs if he was to obtain judgment and the Court was to make
7   such an award.[12]

8        The Court finds that Kassar has now provided enough information to
9   determine a proper bond amount. After weighing the validity of his claim, the nature
10  and amount of the bond requested, and the Plaintiffs' ability to pay, the Court
11  determines that Plaintiffs shall post a cost bond in the amount of $100,000 as to
12  Kassar.

13       As such, Kassar's renewed motion for Plaintiffs to post a costs bond is
14  granted. Plaintiffs shall file this bond within thirty days as required by California
15  Civil Procedure Code section 1030(d).

16

17  **III.   Conclusion**
18       For the foregoing reasons, the Court:
19       (1) **DENIES** Plaintiffs' Motion to Vacate the Court's Order Requiring the
20       Posting of a Costs Bond as to Cameron;
21       (2) **ORDERS** Plaintiffs to post a costs bond of $100,000 as to Cameron
22       within ten days of the date of this Order;

23

24       [12] As stated earlier, an Application to Proceed with Waiver of Costs based on
25  indigence was not received by the Court, and cannot be considered in this Order.
26  Likewise, any facts concerning Plaintiffs' financial situation that would have been
    submitted as supporting evidence to such an Application cannot be considered as they
27  relate to Plaintiffs' ability to furnish a bond.

28                                    - 23 -

1    (3) **DENIES** Defendant Cameron's Motion to Dismiss for Failure to Post the

2    Costs Bond, without prejudice to renew his Motion should Plaintiffs not post

3    the costs bond within ten days of the date of this Order; and

4    (4) **GRANTS** Defendant Kassar's Renewed Motion for Plaintiffs to Post a

5    Costs Bond in the amount of $100,000.  Plaintiffs shall post such bond in the

6    manner specified by the California Civil Procedure Code.

7

8    IT IS SO ORDERED.

9

10   DATED: May 1 2006                    **DICKRAN TEVRIZIAN**
                                          _____
11                                        Dickran Tevrizian, Judge
                                          United States District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28