



P-Send

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FILIA KOURTIS and CONSTANTINOS KOURTIS,<br><br>        Plaintiffs,<br><br>        v.<br><br>JAMES CAMERON, INTERNATIONAL CREATIVE MANAGEMENT, MARIO KASSAR, JEFFREY BERG and JOSEPH ROSENBERG,<br><br>        Defendants. | CASE NO. CV 02-2906 DT (RNBx)<br><br>ORDER **DENYING** PLAINTIFFS' REQUEST TO PROCEED IN FORMA PAUPERIS<br><br>ORDER **DENYING** PLAINTIFFS' RENEWED MOTION TO VACATE THE COURT'S ORDER REQUIRING THE POSTING OF A COSTS BOND AS TO JAMES CAMERON<br><br>ORDER **GRANTING** PLAINTIFFS' MOTION TO RECONSIDER THE COURT'S ORDER REQUIRING THE POSTING OF A COSTS BOND AS TO MARIO KASSAR |

## I.    Background

Plaintiffs Filia and Con Kourtis ("Plaintiffs") are authors of the concept of "The Minotaur," an idea for a film. Plaintiffs claim that defendants James Cameron, International Creative Management ("ICM"), Jeffrey Berg, Joseph Rosenberg and Mario Kassar (collectively, "Defendants") copied their idea for a shape-changing character when they created the films "Terminator 2" and "Terminator 3."

### A.    Factual Summary

The Court is familiar with the facts in this matter, and need recount only those

1    pertinent to this motion.  Unfortunately, the parties have taken a long and winding
2    road to arrive at this point.
3         On February 14, 2006, after consideration of a motion on the subject, the
4    Court ordered Plaintiffs to post a costs bond as to Cameron in the amount of
5    $100,000.  Kourtis v. Cameron, Case No. CV 02-2906 DT (RNBx), at p. 9 (C.D. Cal.
6    Feb. 14, 2006) (hereinafter, the "First Costs Bond Order").  In the same Order, the
7    court found that Kassar qualified for a costs bond but denied his motion due to his
8    failure to set forth the nature and amount of costs and attorneys' fees he expected to
9    incur during this matter.  Id. at p. 8.  Both defendants were entitled to a bond because
10    the Court found there was a reasonable possibility they would ultimately obtain
11    judgment.  Id. at p. 6.  At the time, Plaintiffs presented minimal information
12    concerning their ability to pay the bond, informing the Court only of their monthly
13    income.  Id. at p. 8.
14         Plaintiffs did not post this costs bond as to Cameron, but after the expiration
15    of time to do so, they moved for the Court to vacate its Order.  Kourtis v. Cameron,
16    Case No. CV 02-2906 DT (RNBx), at p. 11 (C.D. Cal. May 1, 2006) (hereinafter, the
17    "Second Costs Bond Order").  This motion was based on the filing of an Amended
18    Complaint, and not on any new financial information submitted by Plaintiffs.  Id. at
19    p. 13.  A few days later, Cameron moved to dismiss the action against him due to
20    failure to post the costs bond.  Id. at p. 11.  The Court considered these motions in
21    its Second Costs Bond Order, issued on May 1, 2006.  Id.  In that Order, the Court
22    denied Plaintiffs' motion to vacate the First Costs Bond Order, but exercised its
23    discretion and permitted Plaintiffs ten additional days in which to post the costs bond
24    for Cameron.  Id. at pp. 23-24.
25         Plaintiffs still failed to post the costs bond, and on May 15, 2006, Cameron
26    filed a motion to dismiss based on the failure to post this costs bond.  Kourtis v.
27    Cameron, Case No. CV 02-2906 DT (RNBx), at p. 4 (C.D. Cal. June 5, 2006)
28

- 2 -

1   (hereinafter, the "Third Costs Bond Order").   Plaintiffs did not file a timely

2   Opposition to this motion, and on June 5, 2006, the Court granted Cameron's motion

3   to dismiss without prejudice. Id. at pp. 4, 8.

4        Meanwhile, on March 20, 2006, Kassar filed a motion to renew or reconsider

5   his previous motion for a costs bond. Second Costs Bond Order, at p. 6. Along with

6   this motion, Kassar submitted more detailed information concerning his expected

7   costs and attorneys' fees, and the Court subsequently granted his motion on May 1,

8   2006, setting the costs bond amount at $100,000. Id. at p. 24. Plaintiffs have not yet

9   posted this costs bond as to Kassar.

10        At this time, Plaintiffs bring what the Court has construed as three separate

11   motions: (1) a Request to Proceed in Forma Pauperis, titled "Application for Waiver

12   of Posting of Bond," (2) a Motion to Vacate and Set Aside Order Setting Costs Bond

13   as to Cameron, and (3) a Motion to Reconsider Order Setting Costs Bond as to

14   Kassar.[1]  Along with these motions, Plaintiffs submit significantly more detailed

15   information concerning their present financial state than that previously before the

16   Court.

17       **B.**   **Procedural Summary**

18        On April 9, 2002, Plaintiffs filed their Complaint in the United States District

19   Court for the Central District of California, and this action was assigned to Judge A.

20   Howard Matz.

21        On May 3, 2002, the case was transferred to Judge William Matthew Byrne,

22   Jr. for all further proceedings, pursuant to General Order 224.

23        On July 22, 2002, defendants ICM, Green and Rosenberg filed a Notice of

24   Motion and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can

25

26

27   [1] The Court clarified that it considered three motions pending in Amended Civil
Minutes dated May 25, 2006.

28
        - 3 -

1   Be Granted.  On August 13, 2002, Kassar was permitted by the Court to join the

2   Motion to Dismiss.

3          On May 2, 2003, the Court granted Defendants' Motion to Dismiss and on

4   June 18, 2003, Judgment was entered on behalf of all defendants.

5          Plaintiffs appealed to the Ninth Circuit Court of Appeals, which issued its

6   decision affirming in part and reversing in part the District Court on August 15,

7   2005.

8          On remand, defendants Cameron and Kassar moved for Plaintiffs to post a

9   costs bond before proceeding with this litigation.  Cameron filed his Notice of

10  Motion and Motion on December 9, 2005.  Kassar filed a Notice of Joinder and

11  Joinder on December 19, 2005.

12         On January 24, 2006, the case was reassigned to Judge Dickran Tevrizian for

13  all further proceedings.

14         On January 30, 2006, defendant Kassar filed an Answer to the Complaint.

15         Also on January 30, 2006, defendant Cameron filed a Notion of Motion and

16  Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted.

17  On January 31, 2006, defendants ICM, Berg and Rosenberg filed a Notice of Joinder

18  and Joinder to Cameron's Motion to Dismiss.

19         On February 14, 2006, the Court issued its First Costs Bond Order, granting

20  Cameron's Motion for Plaintiffs to Post a Costs Bond and denying Kassar's Motion

21  for the same.

22         On March 6, 2006, the Court granted Cameron, ICM, Berg and Rosenberg's

23  Motion to Dismiss without prejudice and with leave to amend within thirty days.

24         On March 20, 2006, Kassar filed a Notice of Motion and Motion for

25  Reconsideration of the Court's Order denying his Motion for Plaintiffs to Post a

26  Costs Bond.

27         On April 5, 2006, Plaintiffs filed their First Amended Complaint.

28
                                        - 4 -

1    On April 5, 2006, Plaintiffs also filed an Notice of Motion and Motion to

2 Vacate the Court's Order for Plaintiffs to Post a Costs Bond.

3    On April 10, 2006, Cameron filed a Notice of Motion and Motion for

4 Dismissal due to Plaintiff's Failure to Post a Costs Bond.

5    On April 18, 2006, defendants ICM, Berg and Rosenberg filed an Answer to

6 the First Amended Complaint. On the same day, defendant Kassar filed an Answer

7 to the First Amended Complaint.

8    On May 1, 2006, the Court issued its Second Costs Bond Order, (1) denying

9 Plaintiff's Motion to Vacate the Costs Bond Order, (2) denying Cameron's Motion

10 to Dismiss and permitting Plaintiffs ten additional days within which to post the

11 costs bond, and (3) granting defendant Kassar's Renewed Motion for Plaintiffs to

12 Post a Costs Bond.

13    On May 15, 2006, defendant Cameron filed a Notice of Motion and Motion

14 for Dismissal due to Plaintiff's Failure to Post a Costs Bond. Plaintiffs failed to file

15 a timely Opposition.

16    On May 18, 2006, Plaintiffs filed a Notice of Motion and Motion to Vacate

17 the Court's Order for Plaintiffs to Post a Costs Bond as to both Cameron and Kassar,

18 and an Application for Waiver of Posting of Bond due to their Indigence. On June

19 12, 2006, Kassar filed his Opposition to these motions. However, neither Cameron

20 nor the other defendants filed an Opposition. Plaintiffs filed their Reply on June 19,

21 2006.

22    On June 5, 2006, the Court issued its Third Costs Bond Order, granting

23 Cameron's motion for dismissal without prejudice.

24    On June 15, 2006, defendants ICM, Berg and Rosenberg filed a Notice of

25 Motion and Motion for Summary Judgment.

26

27

28                                          - 5 -

## II. **Discussion**

### A. **Standard**

#### 1. Costs Bonds

Federal courts may require plaintiffs to post a bond in order to provide security for defendants who might prevail in litigation. See Simulnet E. Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994). A district court normally follows the forum state's practice, particularly when the party is a non-resident. See id.; In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1121 (9th Cir. 1987).

In California:

> When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding. For the purposes of this section, "attorney's fees" means reasonable attorney's fees a party may be authorized to recover by a statute apart from this section or by contract.

Cal. Civ. Proc. Code § 1030(a). The defendant must also show there is a "reasonable possibility" that the defendant will obtain judgment. Id. § 1030(b). The defendant's motion must be accompanied by an affidavit setting "forth the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action or special proceeding." Id. If the Court determines that grounds for the motion have been established, it shall order the plaintiff to file an undertaking for the amount specified in its order. Id. § 1030(c). California recognizes attorney's fees as costs when properly authorized. Id. § 1033.5(a)(10).

This undertaking must be filed not later than thirty days after service of the

- 6 -

court's Order requiring it, or within a greater time allowed by the Court. Id. § 1030(d). If the plaintiff fails to file the undertaking within the time allowed, the plaintiff's action shall be dismissed as to the defendant in whose favor the Order requiring the undertaking was made. Id. (emphasis added). However, failure to file within a proscribed time is not jurisdictional, and the court may accept a late filing at its discretion. See Boyer v. County of Contra Costa, 235 Cal. App. 2d 111, 115 (1965). Furthermore, a dismissal caused by a failure to file an undertaking only occurs following a properly-noticed motion. Id.; Shell Oil Co. v. Superior Court of Sonoma County, 2 Cal. App. 2d 348, 354 (1934).

A court may also determine that the amount of a bond is excessive and order such amount reduced under its discretion, as long as the order is subject to any limitations in the statute providing for the bond. Cal. Civ. Proc. Code § 996.030(a). This determination shall be made upon a properly-noticed motion, and the moving party may then submit a bond in the new amount. Id. §§ 996.030(b)-(c). The court may, in its discretion, allow this new bond to be posted by the end of a period not less than five days. Id. § 996.030(b).

2.   Applications to Proceed in Forma Pauperis

28 United States Code section 1915(a)(1) states that

[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

Despite its text, section 1915(a)(1), in practice, is not limited to prisoners but applies to all individuals otherwise qualified. See Floyd v. United States Postal Serv., 105

- 7 -

1   F.3d 274, 275 (6th Cir. 1997); <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1171 n.1,

2   1172 (10th Cir. 1997). An applicant need not be "absolutely destitute" to be granted

3   this relief. <u>See</u> <u>Adkins v. E.I. du Pont de Nemours & Co.</u>, 335 U.S. 331, 339 (1948).

4   Rather, an "affidavit is sufficient which states that one cannot because of his poverty

5   'pay or give security for the costs . . . and still be able to provide' himself and

6   dependents 'with the necessities of life.'" <u>Id</u>. (citation omitted).

7         Proceeding in forma pauperis is a privilege and not a right. <u>Willer v. Dickso</u>,

8   314 F.2d 598, 600 (9th Cir. 1963). In a civil action for damages, this should be

9   allowed only in exceptional circumstances.[2] <u>Id</u>. A trial court has broad discretion

10   in deciding whether to grant or deny an application to proceed in forma pauperis.

11   <u>See, e.g.</u>, <u>United States v. McQuade</u>, 647 F.2d 938, 940 (9th Cir. 1981) (per curiam).

12             3.   <u>Motion for Reconsideration</u>

13         A motion for reconsideration of the decision of any motion may be made on

14   one of only three grounds:

15        (a) a material difference in fact or law from that presented to the Court

16        before such decision that in the existence of reasonable diligence could

17        not have been known to the party moving for reconsideration at the

18        time of such decision, or (b) the emergence of new material facts or a

19        change of law occurring after the time of such decision, or (c) a

20        manifest showing of a failure to consider material facts presented to the

21        Court before such decision. No motion for reconsideration shall in any

22        manner repeat any oral or written argument made in support of or in

23        opposition to the original motion.

24

25       [2] This may be because, in civil cases for damages, an attorney may take a case

26   on a contingent fee and advance the costs. <u>See</u> 1 <u>Moore's Federal Practice</u> § 4.40[1]

27   (3d ed. 2006). Such a policy, however, does not necessarily contemplate the high

   costs bond amount requested in this matter.

28

1 | Local Rule 7-18.

2 |   **B.**   **Analysis**

3 |     1.   <u>Plaintiffs' Motion to Vacate the Costs Bond as to Cameron</u>

4 |    Plaintiffs renew their motion to vacate and set aside the costs bond as to

5 | defendant Cameron. However, since the filing of Plaintiffs' motion, Cameron has

6 | been dismissed from this matter due to Plaintiffs' failure to post their bond within

7 | the permitted period of time to do so. <u>See</u> <u>Third Costs Bond Order</u>, at pp. 7-8. For

8 | this reason, Plaintiffs' renewed motion is denied as moot.

9 |     2.   <u>Plaintiffs' Application to Proceed in Forma Pauperis</u>

10 |    Although their intent was somewhat unclear from their filings, the Court

11 | determined that Plaintiffs had submitted a proper Application to Proceed in Forma

12 | Pauperis under 28 United States Code section 1915(a)(1).[3] The Court made this

13 | clear to all parties in Amended Civil Minutes dated May 25, 2006, and it will decide

14 | Plaintiffs' motion at this time.

15 |    Defendant Kassar, citing <u>Smart v. Heinze</u>, 347 F.2d 114, 1116 (9th Cir. 1963),

16 | argues that, regardless of their financial state, Plaintiffs' case lacks merit, and as

17 | such, their request to proceed in forma pauperis should be denied. Kassar states that

18 | this is clear because Judge Byrne already determined as a matter of law that "The

19 | Minotaur" and "Terminator 2" were not sufficiently similar to support a claim of

20 | copyright infringement. <u>See</u> <u>Green v. Schwarzenegger</u>, 1995 U.S. Dist. LEXIS

21 | 14,031, at *2 (C.D. Cal. July 11, 1995) (Byrne, J.), <u>aff'd</u>, 107 F.3d 877 (9th Cir.

22 | 1997). Furthermore, he notes that this Court found there was a "reasonable

23 | possibility" that Kassar would prevail based on the prior <u>Green</u> litigation. <u>See</u>

24 |

25 |   [3] Plaintiffs admit, in their Reply, that they are not indigent in the traditional

26 | sense. However, section 1915 is meant to assist such litigants that cannot pay court
fees and costs, no matter the amount. Therefore, section 1915 is a proper vehicle for

27 | Plaintiffs if they prove they are "unable to pay" the costs bond that this Court has set.

28 | - 9 -

1  Second Costs Bond Order, at p. 20.

2      Kassar's contention is misplaced.  First, a finding of non-infringement in this

3  matter based upon the prior <u>Green</u> decision would be erroneous due to the lack of

4  privity between the plaintiffs in the two cases.  <u>See</u> <u>Kourtis v. Cameron</u>, 419 F.3d

5  989, 999 (9th Cir. 2005).  Second, a "reasonable possibility" of prevailing does not

6  mean there is no possibility at all.  Plaintiffs' have listed a great deal of alleged

7  similarities between "The Minotaur" and "Terminator 2" (similarities which the

8  Court assumes they would argue extend to "Terminator 3"), <u>see</u> <u>Complaint</u>, ¶ 54,

9  Exhibit 1, and have stated (without providing any to the Court) that they have

10  additional evidence and arguments not presented in the <u>Green</u> litigation that will

11  bolster their claim.  For these reasons, the Court cannot conclude that Plaintiffs'

12  case, on its face, lacks merit such that an application to proceed in forma pauperis

13  may not be granted.

14      The Court has reviewed Plaintiffs' Application to Proceed in Forma Pauperis

15  and its accompanying documentation in order to determine whether they are "unable

16  to pay" the awarded costs bonds in this matter.  <u>See</u> 28 U.S.C. § 1915(a)(1).  Simply

17  because Plaintiffs are not "absolutely destitute" does not preclude this relief.  <u>See</u>

18  <u>Adkins</u>, 335 U.S. at 339.   However, in this case, such relief is precluded

19  nonetheless.[4]

20      In their Application, Plaintiffs state that (1) they are not currently employed

21  but earned $360 Australian per week through part-time employment up to December

22  2005; (2) they jointly receive $23,560 Australian yearly in unemployment benefits;

23  (3) they hold no savings; and (4) Con Kourtis recently inherited property in Greece

24

25      [4] To the extent that the Court might otherwise take into account the costs bond

26  amount set for Cameron, because Cameron has been dismissed from this matter (even
   if without prejudice), it is irrelevant when determining whether Plaintiffs may

27  proceed indigently because it no longer applies.

28

1   that he values at $100,000 to $120,000 in American dollars. <u>Request to Proceed in</u>

2   <u>Forma Pauperis</u>, at pp. 1-3. Plaintiffs also balance their monthly income of $2,010

3   with monthly expenses of $2,000.[5] <u>Joint Kourtis Decl.</u>, at p. 1.

4       Examining this Application, the Court concludes that Plaintiffs have assets

5   valued, in their own words, at least at $100,000-120,000. As such, as long as

6   Plaintiffs are not required to post a bond in such an amount that they may not

7   provide themselves with the "necessities of life," they may not proceed in forma

8   pauperis. <u>Adkins</u>, 335 U.S. at 339. Allowing a party to proceed in forma pauperis

9   with such assets available to them would be contrary to the purposes of the indigency

10  statute. Similarly, allowing a party to be declared indigent and avoid paying required

11  costs so that they may pay their own counsel, as appears to be at least in part the

12  purpose of Plaintiffs' motion, <u>see</u> <u>Barry Decl.</u>, at ¶¶ 4-5, flies in the face of the policy

13  behind such a statute. For these reasons, the Court finds that, taking into account

14  their income and expenses, Plaintiffs have assets sufficient to pay court costs (as

15  modified later in this opinion) and still provide themselves with the "necessities of

16  life." For this reason, Plaintiffs' Application to Proceed in Forma Pauperis is denied.

17      On another note, Plaintiffs informed the Court that, at least under their

18  understanding, the property in Greece cannot be immediately sold upon inheritance,

19  but must first be valued under Greek procedure before being put up for sale (which

20  might then take some time depending on the asking price and current market). <u>Joint</u>

21  <u>Kourtis Decl.</u>, at pp. 2-3. The Court agrees that such limits may make it more

22  difficult to sell this property, but, alone, they are not sufficient reasons for the Court

23  to permit Plaintiffs to proceed indigently. However, the delay caused by Greek

24  inheritance procedure is a hurdle in this instance, and is addressed later in this

25  opinion.

26

27      [5] It is unclear whether this valuation is in Australian or American dollars.

28

3.    Plaintiffs' Motion to Reconsider Kassar's Motion for a Costs
Bond

Plaintiffs caption their motion concerning Kassar as one to reconsider the Court's order setting a $100,000 costs bond.  In doing so, they do note cite to Local Rule 7-18, which deals with motions for reconsideration, but instead to both California Civil Procedure Code section 1030 and 28 United States Code section 1915.[6]

Kassar argues this is not a proper motion under Local Rule 7-18, because Plaintiffs' motion does not satisfy any of the three exclusive requirements of that Rule.  Arguably, the Kourtises' inheritance and attempted sale of the Greek property qualifies as the emergence of "new material facts" occurring after the original Order, although that is unclear.  Regardless, even if a motion under Local Rule 7-18 is improper, the Court may still consider Plaintiffs' argument.

First, Plaintiffs' motion is properly filed under section 1030 so far as it incorporates California Civil Procedure Code section 996.030.  A district court normally follows the forum state's practice regarding the filing of costs bonds, particularly when the party is a non-resident.  See Simulnet E. Assocs., 37 F.3d at 574; Merrill Lynch Relocation Mgmt., 812 F.2d at 1121.  California procedure permits a party to file a motion asking the Court to determine that the amount of a bond is excessive and order such amount reduced under its discretion, as long as the order is subject to any limitations in the statute providing for the bond.  Cal. Civ. Proc. Code §§ 996.030(a)-(b).  This determination shall be made upon a properly-noticed motion, and the moving party may then submit a bond in the new amount.  Id. §§ 996.030(b)-(c).  Therefore, the Court deems Plaintiffs' motion as one properly filed under section 996.030, as it relates to California Civil Procedure Code section

---

[6] Section 1915, as it applies to this matter, has already been discussed.

1030.

Second, Kassar should recall that, when deciding his original costs bond motion, the Court found that he had "not properly set forth 'the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action.'" First Costs Bond Order, at p. 8 (citing Cal. Civ. Proc. Code § 1030(b)). However, the Court allowed Kassar to renew his earlier motion (or alternatively reconsider it) based on a declaration submitted by his counsel remedying these earlier omissions. Second Costs Bond Order, at p. 12. Here, a similar situation exists. Plaintiffs have always opposed costs bonds in this matter based on their inability to pay. See Con Kourtis Decl. (12/27/05), at ¶ 2 (filed with Plaintiffs' Opposition to the original costs bond motion). Now, they have provided further information regarding Plaintiffs' financial state, including that which remedies areas the Court specifically found lacking in their earlier submissions. See, e.g., First Costs Bond Order, at p. 8. It would be unfair and inequitable for the Court to permit Kassar to renew his earlier motion, yet not to let Plaintiffs effectively act in the same manner.

For this reason, the Court will consider Plaintiffs' motion to vacate or reduce the amount of the costs bond as to Kassar, no matter how it is captioned.[7]

When setting a costs bond amount, California law requires the Court to consider (1) the validity of the claim, (2) the reasonableness of the bond and (3) the ability of the person to furnish the bond. Gonzales v. Fox, 137 Cal. Rptr. 312, 313 (App. Dep't Super. Ct. 1977); see also Beaudreau v. Superior Court of Los Angeles County, 14 Cal. 3d 448, 459 (1975) (same requirements for different undertaking statute). The validity of Plaintiffs' claim has already been addressed in both the First

---

[7] Despite this, the Court wishes both Plaintiffs and Kassar had included their supplemental information last Fall, when this series of motions began.

- 13 -

1   and Second Costs Bond Orders, and the Court expressly adopts its findings in those

2   Orders to the extent they relate to this issue.  Similarly, the nature and amount of the

3   bond requested by Kassar was addressed in the Second Costs Bond Order, and the

4   Court likewise expressly adopts its findings to the extent they relate to this issue.

5   Nothing has changed that affects either of these two prongs.  However, the new

6   financial information submitted by Plaintiffs changes the Court's consideration of

7   their ability to furnish the bond.

8        In opposing the earlier motions, Plaintiffs only submitted to the Court

9   information to the effect that (1) their joint income was approximately $1,600 per

10  month[8] and (2) they could not afford a large costs bond amount.  First Costs Bond

11  Order, at p. 8.  Now, as noted earlier, Plaintiffs provide information that (1) they are

12  not currently employed but earned $360 Australian per week due to part-time

13  employment up to December 2005; (2) they jointly receive $23,560 Australian yearly

14  in unemployment benefits; (3) they hold no savings; and (4) Con Kourtis recently

15  inherited property in Greece that he values at $100,000 to $120,000.  Request to

16  Proceed in Forma Pauperis, at pp. 1-2.  Plaintiffs also balance their monthly income

17  of $2,010 with monthly expenses of $2,000.  Joint Kourtis Decl., at p. 1.  This

18  information, for obvious reasons, allows the Court to properly evaluate Plaintiffs'

19  ability to furnish a costs bond.[9]

20       The Court has now weighed the validity of Plaintiffs' claim, the nature and

21  

---

22      [8] In the absence of evidence to the contrary, the Court assumes the discrepancy

23  between this prior amount and that submitted at this time is due to more precise calculations or a slight change in circumstances.

24  

25      [9] Additionally, with their Reply, Plaintiffs submit evidence that they have sought assistance from their relatives and friends in Australia to help pay for their

26  lawsuit, but to no avail.  See Con Kourtis Decl., at ¶¶ 2-4; Nondas Kourtis Decl., at

27  ¶ 8; Haritos Decl., at ¶ 11.  Although the Court accepts these representations, it is not clear that Plaintiffs have exhausted all avenues of obtaining the costs bond amount.

28

1   amount of the bond requested, and the Plaintiffs' ability to pay.  Taking into account

2   Plaintiffs' ability to pay the costs bond as set forth herein, the Court finds that the

3   previously-set amount of $100,000 as to Kassar is excessive.  Therefore, the amount

4   of Plaintiffs' costs bond as to Kassar is reduced to $50,000.[10]

5        If and when the court reduces a bond amount due to excessiveness, it may, in

6   its discretion, allow this new bond to be posted by the end of a period not less than

7   five days. Cal. Civ. Proc. Code § 996.030(b). Beyond this, the Court recognizes that

8   the lapse in time due to Greek inheritance procedure makes it more difficult for

9   Plaintiffs to post a costs bond, as their only asset of sufficient value is the Greek

10   property.  According to Con Kourtis, as of May 2, 2006, the procedure to gain

11   control of his property in Greece should take approximately thirty to forty days; after

12   securing control, he planned to put the property up for sale. Joint Kourtis Decl., at

13   p. 4.  Based upon this representation, the property should now be offered for sale and

14   could conceivably have been sold.  However, if the process is slower than expected,

15   or the property market weaker, it is conceivable that the Kourtises' attempt to sell the

16   property and finance their lawsuit may drag on indefinitely.  Furthermore, the

17   Kourtises claim they can neither get financing in Greece, because they lack

18   citizenship, nor in Australia, because they lack property to pledge as security. Id. at

19   p. 2.

20        Therefore, based on its discretion under California Civil Procedure Code

21

22   ——————————————
         [10] Plaintiffs also imply that, under Simulnet East Associates, Cameron and
     Kassar unreasonably delayed in moving for a costs bond in this matter.  In Simulnet
23   East Associates, the Court ordered a costs bond just five days before trial, after
     litigation was pending for three years. 37 F.3d 573. Here, Plaintiffs' original lawsuit
24   was quickly dismissed, and defendants first moved for costs bond just a few months
     following the remand of this case from the Ninth Circuit (which it reached following
25   Judge Byrne's grant of Defendants' Motion to Dismiss for Failure to State a Claim
26   Upon Which Relief May Be Granted at the onset of the matter).  The Court agrees
     that Kassar and Cameron did not unreasonably delay in moving for a costs bond.
27

28

1   sections 1030(d) and 996.030(b), the Court will permit Plaintiffs thirty days from the

2   date of this Order to file a costs bond in the amount of $50,000 as to Kassar. This

3   should permit Plaintiffs sufficient time to sell the Greek property or determine an

4   alternative way to secure financing based on the property or otherwise.[11] If this

5   length of time does not prove sufficient, Plaintiffs may, upon good cause shown,

6   bring an appropriate, properly-noticed motion to extend this period prior to its

7   expiration.

8

9   **III.   Conclusion**

10       This is now the fourth Order by this Court deciding far too many motions

11   pertaining to costs bonds in this matter. The Court hopes it is the last, so that any

12   party may tell the Court, "I'll be back," only in order to address the merits of this

13   action.[12]

14   _____

15       [11] Plaintiffs argue, in their Reply, that it is unfair to force them to post a bond

16   as to Kassar because, even if the bond can be paid by the proceeds from the sale of
     their property, no attorney would represent them because they could no longer afford

17   to pay for representation. Once again, Plaintiffs are required to post a costs bond as

18   security against any future award of attorneys' fees, not to directly pay Kassar's
     attorneys. First, the costs bond procedure itself exists to protect the rights of

19   opposing litigants when there is a possibility that awarded costs may not be available

20   at the close of a matter. Not awarding costs bonds because Plaintiffs wish to use their
     assets in another manner would fly in the face of their purpose. Second, if

21   Defendants prevail in this action, there is no guarantee that any attorneys' fees may

22   be awarded, and even if they are, they may be awarded in a significantly smaller
     amount. See First Costs Bond Order, at p. 6 n.2. Some or all of the posted bond

23   would be returned to Plaintiffs at the end of this matter, and they could then use that

24   amount to pay their own counsel.

25       [12] The Court also hopes that the bitterness and sniping that exists between

26   counsel and has permeated recent submissions to the Court will end immediately.
     See, e.g., Barry Decl. (May 15, 2006), at ¶¶ 7-9; Cameron's Opposition to Plaintiffs'

27   Motion to Vacate Order (April 17, 2006), at p. 8. At the very least, such accusations

28

For the foregoing reasons, the Court:

(1) **DENIES** Plaintiffs' Renewed Motion to Vacate the Court's Order Requiring the Posting of a Costs Bond as to James Cameron;

(2) **DENIES** Plaintiffs' Request to Proceed in Forma Pauperis;

(3) **GRANTS** Plaintiffs' captioned Motion to Reconsider the Court's Order Granting a Costs Bond as to Mario Kassar and finds the previous amount of $100,000 excessive; and

(4) **ORDERS** Plaintiffs to post a costs bond of $50,000 as to Kassar within thirty days of the entry of this Order.

IT IS SO ORDERED.

DATED: June 27, 2006

DICKRAN TEVRIZIAN

_____
Dickran Tevrizian, Senior Judge
United States District Court

---

are unprofessional, have been unnecessary to the pending motions, and in effect only upset the Court rather than provide support to the parties' arguments.

- 17 -